UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| WEEKS MARINE, INC., | : | |
|---|---|---|
| Plaintiff | : | CIVIL ACTION NO. |
| v. | : | 3:08-CV-1042 (JCH) |
| | : | |
| CARGO OF SCRAP METAL | : | |
| LADENED ABOARD SUNKEN | : | |
| BARGE CAPE RACE, | : | JULY 31, 2008 |
| Defendant, | : | |

**ORDER**

This is a purported in rem action filed by plaintiff Weeks Marine, Inc. ("Weeks"). Weeks is a professional salvage company that wishes to undertake salvage operations in the Connecticut waters of Long Island Sound. Specifically, Weeks wishes to salvage a cargo of scrap metal that is still aboard the barge Cape Race, which sank in 1984. Through its submission of various memoranda and proposed orders, Weeks has asked this court to 1) begin the process of arresting the underwater cargo; 2) issue an Order to Show Cause why Weeks should not obtain exclusive rights to salvage the cargo on board the Cape Race; and 3) enter a temporary restraining order ("TRO") or preliminary injunction that prevents rival salvors from interfering with Weeks's operations. See Doc. Nos. 6, 14, 15, 16, 17.[1] For the reasons that follow, these requests are **DENIED WITHOUT PREJUDICE**.

**I. BACKGROUND**

In 1984, the tug Celtic sank in Connecticut waters while towing the barge Cape

---

[1] Although Weeks has submitted various proposed orders to the court, and several memoranda, it has not actually filed any Motions on the docket. The court construes Weeks's filings to constitute: 1) a Motion for Entry of a Show Cause Order; 2) a Motion for Attachment; 3) a Motion for Appointment of Substitute Process Server; and 4) a Motion for Entry of a TRO or preliminary injunction.

1

Race.  The barge and its cargo sank along with the Celtic.  According to Weeks's Complaint, the location of the Cape Race has been well known for some time as it is marked on official navigation charts.  Despite this, no one has yet attempted to salvage the cargo aboard the barge.  Weeks represents itself to be the first salvor seeking to obtain the scrap metal sitting under approximately 70 feet of water.

In preparation for its activities, on July 1, 2008, Weeks hired a commercial dive/work boat to take a team of divers to the location of the sunken barge.  These divers scouted out the location, and Weeks now estimates that it will take approximately three fair-weather days to carry out the salvage operation.  Weeks has begun the process of obtaining the necessary authorization from the Coast Guard, and it is waiting for that process to be completed before it begins its salvage operations.  To date, there is no evidence that Weeks has yet salvaged anything from the barge.

On July 14, 2008, Weeks filed this in rem action, naming as the in rem defendant the cargo of scrap metal still aboard the Cape Race.  In its Complaint, Weeks asked the court to declare that it has exclusive rights to salvage the wreck.  Weeks also alleges that under the law of finds it is entitled to obtain title to the cargo.  Finally, Weeks alleges that, if it is not entitled to title under the law of finds, it is entitled to a salvage award.

At the same time Weeks filed its Complaint, Weeks filed a Memorandum (unaccompanied by any document denominated as a Motion) explaining why it believed the court should issue an Order to Show Cause why Weeks should not be granted exclusive salvage rights.  Weeks also asked the court to issue a TRO and/or preliminary injunction that preserved its exclusive salvage rights in the interim.

This court (Underhill, J.) held two phone conferences with Weeks in which the court expressed skepticism that Weeks was entitled to the relief it was seeking. Subsequent to those phone conferences, Weeks filed additional an additional memorandum in support of its claims. Weeks also requested that the court order the arrest of the cargo, and that the court appoint a Weeks diver as substitute process server.

## II. ANALYSIS

In reviewing the various requests presented by Weeks, it is analytically helpful to divide Weeks's requests into two categories. In the first category is Weeks's request for injunctive relief to prevent rival salvors from interfering with Weeks's salvage operations. In the second category are Weeks's requests to have the court essentially "move forward" with the case (<u>i.e.</u> by ordering the arrest of the cargo, by appointing a Weeks diver to serve process, and by issuing an Order to Show Cause). The court will address these two categories in turn.

### A. Injunctive Relief

In this <u>in rem</u> action, Weeks is plainly not entitled to injunctive relief. It is true enough that there is case law recognizing the right of a first salvor to "exclude others from participating in the salvage operations, so long as the original salvor appears ready, willing, and able to complete the salvage project." <u>Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel</u>, 640 F.2d 560, 567 (5th Cir. 1981). The problem for Weeks is that injunctive relief is an <u>in personam</u> remedy, and the court has only <u>in rem</u> jurisdiction in this case. See <u>R.M.S. Titanic, Inc. v. Haver</u>, 171 F.3d 943, 957 (4th Cir. 1999) ("[I]njunctive relief in an <u>in rem</u> action would be

3

meaningless because things or property cannot be enjoined to do anything."). Indeed, when courts issue orders enjoining one salvor from interfering from another, those courts have made clear that they had in personam jurisdiction over the party to be enjoined. See, e.g., Treasure Salvors, 640 F.2d at 567; Hener v. United States, 525 F. Supp. 350, 353 (S.D.N.Y. 1981).

Moreover, even if the court had the power to issue injunctive relief in rem, the court would decline to do so on these facts. In order to be entitled to injunctive relief, a plaintiff must show: (1) that it is likely to suffer irreparable harm if the injunction is not issued; and (2) that is has either a likelihood of success on the merits, or a sufficiently serious question that goes to the merits coupled with a balance of hardships that tips decidedly in the movant's favor. Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008). Weeks does not meet this standard because it cannot show that it is likely to suffer irreparable harm.

In an attempt to demonstrate that it will suffer irreparable harm without the injunction, Weeks suggests that if a rival salvor appeared, and that rival salvor forced Weeks to demobilize its equipment before the operation was completed, the cost of remobilizing "could make the venture uneconomic." Weeks's July 14 Mem. at 7. Weeks also worries that a competing salvor might remove the property from this court's jurisdiction, preventing the perfection of in rem jurisdiction. Id. Yet these concerns are so speculative that the court cannot say it is "likely" that Weeks will suffer irreparable harm without the injunction. Indeed, the location of the scrap metal has been known for over twenty years, and no other potential salvor has attempted salvage at the site. Nor has Weeks identified any other salvors that are waiting in the wings, or that have given

4

any hint they intend to come and interfere with the operation. Moreover, Weeks has obtained at least a several-week head start on any rival salvor. Given that salvage is only expected to take three days once Weeks is ready, it appears likely that Weeks will have completed its operations before any rival could succeed in salvaging any of the cargo.

In light of the foregoing, the court denies Weeks's request for injunctive relief. Of course, if a rival salvor did appear, and it appeared likely that the rival was going to interfere with salvage efforts, Weeks would always be free to return to this court and bring an in personam action seeking to enjoin that rival. Indeed, admiralty law appears to support Weeks's belief that, as the first salvor, Weeks is entitled to exclusive salvage rights. See Yukon Recovery, LLC v. Certain Abandoned Property, 205 F.3d 1189, 1195-96 (9th Cir. 2000).

B.  Other Process

The court now turns to Weeks's request that the court "proceed" with the in rem action by issuing various orders.

This action arises under the admiralty jurisdiction of the federal courts. See Fed. R. Civ. P. 9(h). As such, it is governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Fed. R. Civ. P. Supp. R. A. Supplemental Rule C provides the relevant procedures for in rem actions.

Rule C instructs the court to "review the complaint and any supporting papers. If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Fed. R. Civ. P. Supp. R. C(3)(a)(i). Rule C then continues to

explain how service is effected:

> (i) If the property that is the subject of the action is a vessel or tangible property on board a vessel, the warrant and any supplemental process must be delivered to the marshal for service.
> (ii) If the property that is the subject of the action is other property, tangible or intangible, the warrant and any supplemental process must be delivered to a person or organization authorized to enforce it, who may be (A) a marshal; (B) someone under contract with the United States; (C) someone specially appointed by the court for that purpose; or, (D) in an action brought by the United States, an officer or employee of the United States.

Fed. R. Civ. P. Supp. R. C(2)(b).

Once the warrant is in the hands of the appropriate person, Rule E(4) provides further direction. In the case of tangible property (such as that involved here):

> [T]he marshal or other person or organization having the warrant shall take [the property] into the marshal's possession for safe custody. If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent. . . .

Fed. R. Civ. P. Supp. R. E(4)(b). Then, after the arrest is completed, "any person claiming an interest in [the property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest . . should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(5).

Read together, it is clear that these rules require that the court first determine if the conditions for an <u>in rem</u> action appear to exist. <u>See</u> Fed. R. Civ. P. Supp. R. C(3)(a)(i). If they do not, then there is no basis on which the court can order the arrest

6

of the defendant property.  See id.  And since arrest of the property is what triggers a right to a hearing on the plaintiff's salvage claims, see Fed. R. Civ. P. Supp. R. E(4)(f), the court will not issue a show cause order until the property has been arrested.  Cf. Dluhos v. The Floating and Abandoned Vessel, Known as "New York", 162 F.3d 63, 68-69 (2d Cir. 1998) (explaining that arrest of the defendant res is a prerequisite to maintaining in rem jurisdiction).

The question, therefore, is whether the conditions for an in rem action appear to exist.  And in making this determination, the court's task is to ask whether plaintiff has made a "prima facie showing that the plaintiff has an action in rem against the defendant in the amount sued for and that the property is within the district."  Fed. R. Civ. P. Supp. R. C Advisory Committee's Note (1985).  While the court's inquiry is not intended to be rigorous, see id., the Advisory Committee's Note makes clear that some degree of "judicial scrutiny" is required "before the issuance of any warrant of arrest."  Id.  The Note further explains that this rule was added in response to a line of Supreme Court cases, beginning with Sniadach v. Family Finance Corp., 395 U.S. 337 (1969), which had emphasized the due process concerns that can exist when a litigant is free to attach property without initial judicial oversight.  See Fed. R. Civ. P. Supp. R. C Advisory Committee's Note (1985).  Compare Fuentes v. Shevin, 407 U.S. 67, 73-74, 96 (1972) (finding unconstitutional a Florida statute that required the court clerk to summarily attach property based on the bare assertion of a plaintiff that he was entitled to do so), with Mitchell v. W. T. Grant Co., 416 U.S. 600, 618 (1974) (finding a Louisiana attachment statute to be constitutional, and distinguishing Fuentes on the grounds that the Louisiana statute required a judicial officer to scrutinize the application

before attachment could be authorized), and North Georgia Fishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 606-07 (1975) (holding that a Georgia garnishment statute was unconstitutional, and noting that unlike the statute in Mitchell, the Georgia statute allowed a writ of garnishment to enter before a judge had reviewed the garnishor's application).

In conducting its review, the court concludes that the Complaint plainly fails to establish a prima facie case of in rem jurisdiction. Rule C sets forth the two limited circumstances in which a party may proceed in rem in an admiralty action: when the party seeks "[t]o enforce any maritime lien" and "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." Fed. R. Civ. P. Supp. R. C(1). Weeks has not identified any federal statute that would provide for an in rem maritime action in these circumstances, nor has Weeks identified a federal statute that authorizes an analogous proceeding here. As the court is also not aware of any relevant statute that would bear on the issue, Weeks's assertion of in rem jurisdiction will stand or fall based on whether or not its suit is enforcing a maritime lien.

Insofar as Weeks asserts a claim under the law of finds, Weeks's suit does not seek to enforce a maritime lien. That is because a claim under the law of finds seeks to establish full title to property, rather than enforcement of a mere lien. R.M.S. Titanic, 171 F.3d at 961. [2]

Weeks's claims under the law of salvage come closer to being proper subjects of

---

[2] Actions seeking to try title to maritime property are governed by Rule D, which in turn directs courts to issue process in accordance with Rule B(2), a rule that governs in personam actions. See Fed. R. Civ. P. Supp. R. B(2); Fed. R. Civ. P. Supp. R. D.

8

in rem jurisdiction. That is because once a salvor saves property from marine peril, he obtains a maritime lien against the property saved. The Sabine, 101 U.S. 384, 386 (1879). The salvor may then bring an in rem action against the property, with the ultimate goal of obtaining a salvage award.

Because salvage claims seek to enforce a maritime lien, it is no surprise that the rules expressly contemplate that salvage claims can proceed in rem under Rule C. See Fed. R. Civ. P. Supp. R. C Advisory Committee's Note (1966). The problem here is that Weeks has yet to recover anything from the wreck. This means that Weeks does not yet have a maritime lien to enforce, because it is blackletter law that one of the elements of a successful salvage claim is "[s]uccess, in whole or in part, or that the service rendered contributed to such success." The Sabine, 101 U.S. at 386; cf. id. at 386 (explaining that salvors "have a lien upon the property saved, which enables them to maintain a suit in rem against the ship or cargo, or both where both are saved in whole or in part") (emphasis added); 3A Benedict on Admiralty § 143 ("The lien comes into being when the salvage service has been rendered and it can be enforced by process in rem in an admiralty court against the property saved.") (emphasis added). Without a maritime lien to enforce, it does not appear to the court that the conditions for an in rem action yet exist.

It is true enough, as plaintiffs point out, that there are reported cases in which a court has exercised in rem jurisdiction before a salvage had been entirely completed. See, e.g., Moyer v. The Wrecked and Abandoned Vessel, 836 F. Supp. 1099, 1104 (D.N.J. 1993); R.M.S. Titanic, 171 F.3d at 964. But in these cases, at least part of the wreck had been salvaged, and so a maritime lien had been created on at least part of

9

the defendant property. That fact allowed these courts to take advantage of the legal fiction that a shipwreck is undivided, and so possession of a portion of the res is constructive possession of the entire res. R.M.S. Titanic, 171 F.3d at 964. In any event, none of these cases have actually considered the language of Rule C(3), nor have they considered its impact in the circumstances presented in this case.[3]

## III. CONCLUSION

The plaintiff is may well be correct that admiralty law gives it exclusive rights to salvage the cargo aboard the Cape Race. However, the present action has been brought solely as an in rem action against cargo that has yet to be salvaged. At present therefore, the court has no basis upon which it can issue an injunction, and the court further finds that the conditions for an in rem action do not appear to exist. Accordingly, the court **DENIES** the plaintiff's various requests. This denial is **WITHOUT PREJUDICE** to plaintiff maintaining a future in personam action against any rival salvors that appear likely to interfere with Weeks's operations.[4] The denial is also **WITHOUT PREJUDICE** to plaintiff renewing its attempts to proceed in this in rem action once cargo has actually been salvaged.

---

[3] Plaintiffs also rely on Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel, 833 F.2d 1059 (1st Cir. 1987), in which the district court had allowed an in rem action to proceed before any salvage had actually been conducted. In that case, however, the appeals court expressly declined to consider the propriety of in rem jurisdiction. Id. at 1061 n.1. The court was able to avoid the issue because it undisputedly had in personam jurisdiction over the relevant parties. Id.

[4] The court expresses no opinion on whether such action would need to be filed separately, or whether it could be maintained in this proceeding simply by filing an amended complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 31st day of July, 2008.

       /s/ Janet C. Hall
      Janet C. Hall
      United States District Judge